558 A.2d 574

John H. Singleton, Petitioner *v.* Commonwealth of
Pennsylvania, Unemployment Compensation
Board of Review, Respondent.

Argued March 6, 1989, before Judges CRAIG and
COLINS (P.), and Senior Judge BARBIERI, sitting as a panel
of three.

*Terry L. Fromson, Community Legal Services, Inc.,* for petitioner.

*John Herzog,* Assistant Counsel, with him, *James K. Bradley,* Assistant Counsel, and *Clifford F. Blaze,* Deputy Chief Counsel, for respondent.

OPINION BY JUDGE CRAIG, April 26, 1989:

John H. Singleton appeals an order of the Unemployment Compensation Board of Review reversing a referee's decision and concluding that failure to pass a drug screening test constitutes willful misconduct under section 402(e) of the Unemployment Compensation Law,[1] thereby disqualifying him from receiving benefits.

The board's findings of fact are as follows. Singleton worked as a bus driver for SEPTA from August 12, 1981 until November 20, 1986. On November 22, 1986, he was discharged for "discourtesy and conduct unbecoming a SEPTA employee." On January 13, 1987, Singleton was reinstated upon condition that he successfully complete a standard reinstatement medical exam, which included a drug screen, on January 16. The reinstatement was made pursuant to a union-employer negotiated agreement. He

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §802(e).

reported, as instructed, to SEPTA's medical department for the exam.

Singleton returned to work on January 20, 1987, but was removed from his route during that day and informed that he had failed the drug screen. The results of the screen showed traces of cocaine in metabolite form present in Singleton's urine, although he denied using the drug. On February 5, 1987, Singleton was discharged "for violation of the employer's drug policy [SEPTA Order No. 85-1] and for failure to pass a drug screening test." In addition to the facts above, the board found that Singleton was aware of the policy and that the drug policy was not unreasonable.

On March 28, 1987, the Office of Employment Security (OES) responded to Singleton's application for unemployment compensation benefits by issuing a denial under section 402(e). Singleton appealed the decision, and, after a hearing, a referee reversed the decision by OES and allowed benefits. SEPTA then filed a further appeal, and the board issued its initial decision on July 15, 1987, reversing the referee's decision and denying benefits. Singleton appealed the board's decision to the Commonwealth Court, and this court, upon agreement by counsel for the respective parties, remanded the application to the board for the purpose of scheduling oral argument and thereafter reconsidering its decision and order. On May 25, 1988, the board issued a new decision denying benefits to Singleton.

Singleton, now appealing the board's reconsidered decision, asserts that he cannot be denied benefits for willful misconduct when the discharge is "pursuant to an unconstitutional and unreasonable employer policy." Alternatively, Singleton contends that he cannot be denied benefits for willful misconduct related to his work based solely upon the results of a drug screening test without any evidence or finding of job impairment.

In unemployment compensation cases, our scope of review is limited to a determination of whether one's constitutional rights have been violated, an error of law has been committed, or whether any finding of fact made by the board and necessary to support its adjudication is not supported by substantial evidence. *Estate of McGovern v. State Employees' Retirement Board,* 512 Pa. 377, 517 A.2d 523 (1986). Questions of credibility and evidentiary weight are left to the Unemployment Compensation Board of Review. *Bignell v. Unemployment Compensation Board of Review,* 61 Pa. Commonwealth Ct. 568, 434 A.2d 869 (1981). The prevailing party has the benefit of all reasonable inferences drawn from the evidence, and we are bound by findings of fact supported by substantial evidence. *Taylor v. Unemployment Compensation Board of Review,* 474 Pa. 351, 378 A.2d 829 (1977).

For behavior to be considered willful misconduct, it must show a willful disregard of the employer's interests, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has the right to expect, or negligence in such degree or recurrence so as to manifest evil design, wrongful intent or intentional and substantial disregard of the employer's interests or the employee's duties and obligations. *Bignell,* 61 Pa. Commonwealth Ct. at 571, 434 A.2d at 871.

SEPTA Order No. 85-1, "supplement[ing] the current Rule Books, Orders, or Labor Agreements governing the use of intoxicants and/or drugs," states:

> The possession of intoxicants or controlled substances while on duty is prohibited and is a dischargeable offense.

> Because of the unpredictable residual effects of certain intoxicants and/or controlled substances, the presence of intoxicants or controlled substances in employes off-duty but subject to duty; when reporting for duty; on duty; on the

Authority property or in recognizable uniform; is strictly prohibited and is a dischargeable offense. Any employe suspected of being in violation of this order may be required to take a blood, urinalysis or other toxicological test(s).

An employe found to be under the influence of, *or,* so tested, whose test(s) results show a qualitative and/or quantitative trace of such material in his/her system shall be discharged from Authority service.

An employe covered by Paragraph 3 who refuses to submit to such test(s) shall be subject to discharge from the Authority's service. (Emphasis added.)

The United States Supreme Court has held that searches of public employees do not violate the Fourth Amendment if the search is reasonable under the circumstances. *O'Connor v. Ortega,* 480 U.S. 709 (1987) (plurality opinion). Accordingly, the first issue before us is whether SEPTA's policy of requiring a drug screen as part of the reinstatement physical examination is reasonable and therefore constitutional.

SEPTA is a public employer in the business of transporting thousands of customers each day. Because of compelling concerns for public safety, precautionary measures must be taken whenever personnel are employed to assume the responsibility of transporting mass numbers of people. SEPTA has taken a responsive step by implementing the policy requiring reinstated employees to undergo a physical examination, which includes drug screening.

Controlled substances can adversely affect one's job performance. Therefore, SEPTA's inclusion of a drug screen as part of the physical exam is a reasonable test to aid in assessing whether a prospective transporter meets minimum standards necessary to insure the safety of all

those who come into contact with the transporting vehicles.

With regard to an employee seeking reinstatement, we must consider the fact that, by definition, the applicant has not been under the normal scrutiny of the employer for some period of time. Therefore, reassessment of the applicant's condition is a reasonable, valuable safety precaution.

Singleton relies on the case of *Transport Workers' Union of Philadelphia, Local 234 v. Southeastern Pennsylvania Transportation Authority,* 678 F. Supp. 543 (E.D. Pa. 1988), *aff'd,* 863 F.2d 1110 (3rd Cir. 1988), as authority that the return-to-work drug screen test is unconstitutional.

The case involved, in part, the issue of whether random urinalysis testing violated the Fourth Amendment. The district court, holding that random testing is not unconstitutional, but return-to-work drug testing is unconstitutional, stated:

> With random testing in place, the need for return to work testing would be substantially eliminated. Employees who return to work will immediately be subject to daily random testing. Physical examination conducted upon return to work should be sufficient to identify employees clearly not fit for duty.

*Id.,* 678 F. Supp. at 551. We are not persuaded by the rationale.

Subjecting an applicant to random testing, only after he has embarked upon actual performance of his safety-related job functions, is not an effective safeguard when we consider the potential damage that could occur in the time between employment or re-employment and the first random drug screen. The district court acknowledges that a physical exam sufficiently identifies an

employee's fitness for duty, but the court does not elaborate on what *should* be included in the physical examination.

The purpose of the exam is to aid in evaluating a person's capacity to be a responsible employee, and reliable information adding accuracy to that evaluation should be considered. SEPTA's reinstatement physical examination policy provides critical information necessary to evaluate an applicant's ability to perform and to promote public safety. Because the extent of a physical examination should not be unnecessarily limited when the concerns of public safety are involved, we hold SEPTA's policy to be reasonable and constitutional.

Two very recent decisions of the United States Supreme Court are illuminating, in that they offer both guidance and analogous help.

In *Samuel K. Skinner, Secretary of Transportation v. Railway Labor Executives' Assoc.*, 489 U.S.    , 109 S.Ct. 1402, 103 L.Ed. 2d 639 (1989), which approved drug testing of railroad employees after accidents, the United States Supreme Court held that safety concerns justify such testing without "individualized suspicion. *Id.*, at    , 109 S.Ct. at 1419, 103 L.Ed. at 667.

*National Treasury Employees Union v. William Von Raab, Commissioner, United States Customs Service,*    U.S.    , 109 S.Ct. 1384, 103 L.Ed. 2d 685 (1989), filed the same day, approved suspicionless drug testing of urine when U.S. Customs Service employees are seeking promotion to firearm-carrying or drug interdiction positions. Drug testing as a precondition to a safety-related job promotion bears a reasonable analogy to drug-testing as a precondition to re-employment in a safety-related public service position.

Moreover, Singleton waived his Fourth Amendment rights when he voluntarily submitted to the urine test.

*Shaw v. Unemployment Compensation Board of Review,* 115 Pa. Commonwealth Ct. 61, 539 A.2d 1383 (1988).

The facts in *Shaw* are that Shaw, a SEPTA bus driver, was directed to report to the SEPTA medical department for an evaluation of an alleged injury and to undergo a body fluid screening test, to which Shaw voluntarily submitted. He tested positive for marijuana, and SEPTA informed him that, "in accordance with its Policy 85-1, the presence of the drug constituted a dismissal offense." *Id.* at 64, 539 A.2d at 1384. SEPTA offered Shaw the alternative of a thirty-day leave of absence to enter a drug treatment program, but he refused the offer. SEPTA then informed Shaw that he would have to undergo a second body fluids test, and upon submitting to another test and testing positive again, SEPTA discharged him for violating Policy 85-1. We affirmed the board's denial of benefits on the ground of willful misconduct, and ruled that "any assertion by the claimant that the body fluids test violated his Fourth Amendment rights is vitiated by the fact that he consented to both tests." *Id.* at 66, 539 A.2d at 1385.

Singleton asserts that his "submission to the urine test was compelled under threat of loss of employment." However, the coercive tactic Singleton claims was used against him is identical to the one which we ruled was *not* coercive in *Shaw.*

Singleton contends, alternatively, that he cannot be denied benefits for work-related willful misconduct[2] based solely upon results of a drug screening test without any evidence or finding of job impairment. However,

---

[2] Section 402(e) provides that:

An employe shall be ineligible for compensation for any week—

. . . .

(e) In which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work ... .

Order No. 85-1 does not require a finding of job impairment; it only specifies that "[a]n employee found to be under the influence of, *or, so tested, whose test(s) results show a qualitative and/or quantitative trace of such material in his/her system* shall be discharged from Authority service." (Emphasis added.) Singleton's test results show traces of cocaine in metabolite form present in his urine, and that satisfies the drug discharge requirement of Order No. 85-1.

Moreover, our decision in *Szostek v. Unemployment Compensation Board of Review,* 116 Pa. Commonwealth Ct. 7, 541 A.2d 48 (1988), dictates that a finding of fact pertaining to the direct effect upon job performance is not required. *Szostek* involved a claimant, employed as a meter reader, who was discharged after admitting that he smoked marijuana subsequent to his return to work from a drug rehabilitation leave of absence. The board found that his return to work was conditioned on his remaining drug-free and submitting to random drug screenings. Szostek was discharged by the employer for violating the condition, and denied benefits by the board for behavior rising to the level of willful misconduct under section 402(e).

On appeal, we noted that, because the conditions of Szostek's re-employment had been clearly set forth, and that he had consented to the testing as a condition, no argument could be made that Szostek had not violated the condition of re-employment. Specifically, we held:

> It is apparent from the record that Employer discharged Claimant for violation of a specific condition of employment, i.e., drug use when Claimant had agreed to remain drug-free. Hence, *findings of fact pertaining to the nature of Claimant's drug use and its direct effect upon job per-*

*formance are not required under the circumstances.*

*Id.* at 13, 541 A.2d at 51 (emphasis added, citations omitted).

Finally, as to Singleton's questioning of the validity of the drug test, we will not disturb the board's acceptance of the test results because the board determines the credibility and weight of the evidence.

In conclusion, Singleton was properly discharged under SEPTA Order No. 85-1. The board's findings are based on substantial evidence, no error of law has been committed and no constitutional rights have been violated. Singleton's disregard of SEPTA's rules constitutes willful misconduct, and therefore, he is ineligible to receive benefits.

Accordingly, we affirm the board's decision.

### ORDER

NOW, April 26, 1989, the decision of the Unemployment Compensation Board of Review, No. B-259805-B, dated May 25, 1988, is affirmed.