LONNIE McALLISTER, Plaintiff-Appellee, v. BOARD OF REVIEW OF THE DEPARTMENT OF EMPLOYMENT SECURITY *et al.*, Defendants-Appellants.

First District (6th Division)    Nos. 1—92—4283, 1—92—4461 cons.

Opinion filed May 6, 1994.

William H. Farley, Jr., and Jodi G. Eisenstadt, both of Chicago Transit Authority, of Chicago, for appellant Chicago Transit Authority.

Roland W. Burris, Attorney General, of Chicago (Rosalyn B. Kaplan, Solicitor General, of counsel), for appellants Board of Review and Director of Department of Employment Security.

Alicia Alvarez, of De Paul Legal Clinic, of Chicago, for appellee.

JUSTICE GIANNIS delivered the opinion of the court:

Defendants appeal from an order of the circuit court of Cook County reversing the decision of the Illinois Department of Employment Security Board of Review (Board) which had denied plaintiff's claim for unemployment insurance benefits. Defendants contend that the circuit court erred in reversing the decision where it was neither against the manifest weight of the evidence nor clearly erroneous.

Plaintiff was employed as a bus operator for the Chicago Transit Authority (CTA) from December 4, 1972, until he was suspended from his employment on April 15, 1991, after urine and blood tests revealed that he had consumed cocaine. His claim for unemployment insurance benefits was denied by the Board, which found that plaintiff's behavior constituted misconduct under the provisions of the Unemployment Insurance Act (Act) (820 ILCS 405/602 (West 1992)).

At an administrative hearing on July 23, 1991, plaintiff testified that on Wednesday, April 10, 1991, after allowing all passengers to disembark at the bus terminal at Madison Street and Austin Avenue, he pulled the bus around to the other side of the terminal in order to use the bathroom. CTA policy requires a driver to secure the bus by placing the gear in neutral and applying the hand brake. Plaintiff testified that he failed to comply with this policy because he was in a hurry. When he came out of the bathroom, plaintiff saw the bus slowly moving forward until it struck a guard rail. He testified that he did not violate CTA policy intentionally, but hurried to the bathroom because he was behind schedule. A short time later, he reported the incident to Mr. Fletcher, his designated "point man," whose office was located at Madison Street and Kedzie Avenue. Fletcher advised him to report the incident at the end of the day. At the end of the day, plaintiff completed an accident report and submitted it to Superintendent Rolland. He also submitted to blood and urine tests.

Plaintiff testified that he had never consumed illegal substances during work hours, nor had he ever worked under the influence of any illegal substances. He stated that the reason his medical tests indicated the presence of cocaine was that he had consumed cocaine after work six days earlier. During the administrative hearing, the following excerpt from the CTA employee handbook was read into evidence:

> "14A, personal conduct. The following acts are not permissible. Subsection A, use or possession of intoxicating liquor, controlled substances, or narcotics of any kind from the time an employee reports for work until the conclusion of the employee's work day. Or reporting for work in an apparent condition due to the use of same.
>
> Further, an employee may not have a controlled substance or narcotics of any kind in his or her system from the time an employee reports for work, until the conclusion of the employee's work day. Use of illegal drugs is forbidden."

Isaac Clark, a superintendent for the CTA, testified that the impact with the guard rail was the only reason plaintiff was asked to submit to blood and urine tests.

The referee found that the presence of the illegal drug in the plaintiff's system while on duty, regardless of whether he would have been deemed under the influence of the substance, was sufficient to constitute a violation of an employer policy which harmed the employing unit. The referee found that plaintiff was discharged for misconduct connected with work. The Board affirmed the referee's decision.

Plaintiff filed a complaint for administrative review, and after a hearing, the circuit court reversed the Board's decision stating as follows:

> "There is no evidence that his appearance or his work was impacted or impaired as a result of the narcotics in his system, and in fact, he was told to continue on his schedule.
>
> The Board found that the claimant was disqualified because of misconduct and that the employer was harmed by the fact that there was a narcotic in his system.
> 
> ***
> 
> The Court is going to reverse this decision on the basis that there was no harm to the employer established and there had been no previous warnings regarding narcotics in this particular case. Even if the rule had been violated, the other elements are missing."

Defendants contend that the Board correctly determined that plaintiff was discharged for misconduct and was, therefore, ineligible

for unemployment benefits. Defendants assert that the cocaine found in plaintiff's system harmed the CTA by exposing it to the potential for increased liability should the bus have hit property or persons other than a CTA guard rail, by adding to public distrust of transit safety, thus jeopardizing revenue generated from fares, and by causing the CTA to be out of compliance with Federal and State mandates designed to promote drug-free transit, thereby jeopardizing revenue derived from governmental sources.

In support of their argument that the decision of the Board should be affirmed, defendants cite an administrative rule which defines "harm" to the employer. Specifically, defendants refer to the following language:

> "(c) damage or injury that could be reasonably foreseen to occur but for the individual being prevented from either carrying out his act or continuing to work." (56 Ill. Adm. Code 2840.25 (1993).)

One of the examples listed under subsection (c) states:

> "Federal law provides that a commercial carrier may not permit its vehicle to be operated by an individual if there is, within the individual's system, the presence of unlawful, controlled substances beyond a particular level. The presence of such a substance during working hours within the system of a commercial driver employed by the carrier constitutes harm to the carrier. To continue to employ the individual as a driver would result in the carrier's violating federal law." (56 Ill. Adm. Code §2840.25(c)(3) (1993).)

Defendants note that the CTA uses the same standard threshold contained in Federal regulations for determining whether an individual has tested positive for cocaine. (See 49 C.F.R. §§ 40.29(e), (f) (1993).) Defendants argue that the amount of cocaine found in plaintiff's system after the urine test exceeded the threshold level.

Plaintiff asserts that the CTA's rule is unreasonable because it governs an employee's conduct away from his employment where such conduct does not affect his work performance. He also argues that off-duty drug use cannot be construed as willful or intentional conduct in the absence of evidence that it actually affected the employee's job performance, and he argues further that the CTA was not harmed by the residual traces of cocaine found in his system because he was not impaired or intoxicated. Finally, plaintiff suggests that even if his actions constituted misconduct, the misconduct was not connected with his work.

The Act defines misconduct as follows:

> "the deliberate and willful violation of a reasonable rule or policy of the employing unit, governing the individual's behavior

in performance of his work, provided such violation has harmed the employing unit or other employees or has been repeated by the individual despite a warning or other explicit instruction from the employing unit." 820 ILCS 405/602 (West 1992).

■ In a case involving a claim for unemployment benefits, the Board is the trier of fact and its findings of fact are considered *prima facie* true and correct. (735 ILCS 5/3—110 (West 1992); *Grant v. Board of Review* (1990), 200 Ill. App. 3d 732, 734, 558 N.E.2d 438.) The function of a reviewing court in such a case is to determine whether the Board's findings were against the manifest weight of the evidence. (*Jackson v. Board of Review* (1985), 105 Ill. 2d 501, 513, 475 N.E.2d 879; *Nichols v. Department of Employment Security* (1991), 218 Ill. App. 3d 803, 809, 578 N.E.2d 1121.) A reviewing court should not substitute its judgment for that of the agency unless the record lacks substantial evidence in support of the agency's findings. (*Collier v. Department of Employment Security* (1987), 157 Ill. App. 3d 988, 993, 510 N.E.2d 623.) While unemployment insurance benefits are a conditional right and the burden of establishing eligibility rests with the claimant, the Act must be liberally interpreted to favor the awarding of benefits. *Adams v. Ward* (1990), 206 Ill. App. 3d 719, 723, 565 N.E.2d 53.

Illinois law requires that the CTA establish and enforce a drug testing program consistent with Federal statutes and regulations. (70 ILCS 3605/47, 3615/2.24 (West 1992).) In addition, the CTA must maintain a drug-free workplace to be eligible for a grant or contract from a Federal agency. 41 U.S.C. §§ 701, 702 (1988).

■ The United States Supreme Court has stated that drug testing of persons in safety-sensitive positions is justified without individualized suspicion because:

"[a railroad employee] can cause great human loss before any signs of impairment become noticeable to supervisors or others. An impaired employee *** will seldom display any outward 'signs detectable by the lay person or, in many cases, even the physician.' ***

* * *

The possession of unlawful drugs is a criminal offense that the Government may punish, but it is a separate and far more dangerous wrong to perform certain sensitive tasks while under the influence of those substances." *Skinner v. Railway Labor Executives' Association* (1989), 489 U.S. 602, 628-33, 103 L. Ed. 2d 639, 667-70, 109 S. Ct. 1402, 1419-22.

The Oklahoma Supreme Court addressed the issue of whether drugs found in the system of a truck driver after a random test, where the driver exhibited no signs of impairment or unusual

behavior, could be attributed to the driver as misconduct connected with work. The court stated:

"We agree *** that a policy to promote on-the-job safety should be supported. Accordingly, we hold that where an employer shows that it fired a former employee for failing a drug test, which test was part of a program to promote safety in the employer's work place, the former employee is disqualified from receiving unemployment benefits. Such a result is particularly appropriate where, as here, passing such a test was an agreed condition of employment. Under such circumstances, the Commission may not require the employer to make any further showing, such as impairment or strange conduct on the job." *Farm Fresh Dairy, Inc. v. Blackburn* (Okla. 1992), 841 P.2d 1150, 1153.

In the case at bar, the circuit court made an independent determination that mere disobedience of the CTA rule forbidding the presence of narcotics in an employee's system during work hours did not harm the employer under the Act. The court stated that, absent evidence that plaintiff was actually impaired by the drug, plaintiff was not guilty of misconduct connected with his employment and was eligible to receive unemployment benefits. We do not agree.

■ The record demonstrates that plaintiff by his own admission willingly consumed cocaine when he was off duty. Although he stated that he consumed the narcotic on Friday and the incident did not occur until Wednesday, the level of cocaine in his system exceeded the standard threshold amount specified in the Federal regulations adopted by the CTA.

The record in the instant case also discloses that, in addition to the CTA rule forbidding narcotics in an employee's system, the collective bargaining agreement between the CTA and the union representing bus operators gives the CTA the right to test any bus operator for drugs after an accident. Contrary to plaintiff's assertions, we find that both of these conditions of employment are reasonable efforts by the CTA to promote public safety and the protection of the lives of its passengers.

The administrative rule and examples reflect the legislature's recognition that the presence of a controlled substance during working hours within the system of a commercial driver can constitute harm to the commercial carrier. The referee found that the presence of the illegal drug in the plaintiff's system while on duty was a violation of the CTA's policy and constituted harm to the employing unit. We hold that the circuit court exceeded its scope of review in making an independent determination that the CTA had not been harmed by the plaintiff's use of cocaine in this case. *Ryan v. Verbic* (1981), 97 Ill. App. 3d 739, 741, 423 N.E.2d 534.

Plaintiff cites *Adams v. Ward* (1990), 206 Ill. App. 3d 719, 565 N.E.2d 53, to support his contention that because no actual damages occurred as a result of the presence of the narcotics, the CTA was not harmed. However, *Adams* did not involve the safety-sensitive operation of public transportation and therefore is not applicable to the instant case. Further, the *Adams* decision was based on the fact that the employer did not have an established rule regarding the conduct in question, and therefore it could not find the employee's conduct to be willful. That is clearly not the case here. Plaintiff also cites *Adams* for the proposition that the mere potential of injury is insufficient to show harm to the employer. However, the court specifically noted that further injury to the employer was not possible because the employee had been terminated. In the instant case, plaintiff has not been discharged but suspended.

Plaintiff also cites *Hoffmann v. Lyon Metal Products, Inc.* (1991), 217 Ill. App. 3d 490, 577 N.E.2d 514, in support of his contention that future harm to an employer is not sufficient to disqualify an employee from receiving benefits. There, the court found that there was no testimony or other evidence that the employer had suffered or would suffer any loss of property or other harm as a result of the employee's "borrowing" an electrical cord and removing it from the premises in violation of a package pass policy. As with *Adams*, the decision in *Hoffmann* does not pertain to the serious issue of the safety of passengers on public transportation and has limited applicability to the case at bar.

Accordingly, we find that the trial court erred in determining that the CTA was not harmed by the presence of cocaine in defendant's system during working hours.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed.

Reversed.

McNAMARA and RAKOWSKI, JJ., concur.