GEORGE'S INC. *v.* DIRECTOR, Employment Security
Department, and Jimmy Don Wilson

E 93-259 900 S.W.2d 590

Court of Appeals of Arkansas
En Banc
Opinion delivered June 28, 1995

78

*Bassett Law Firm*, by: *Shawn D. Twing*, for appellant

*Ronald A. Calkins*, for appellee Arkansas Employment Security Department.

JOHN MAUZY PITTMAN, Judge. Appellant, George's Inc., appeals from an Arkansas Board of Review decision awarding unemployment benefits to appellee Jimmy Don Wilson. The Board found that appellee was discharged from his last work for reasons other than misconduct in connection with the work. Appellant argues that the Board's findings that appellant's drug and alcohol abuse policy was unreasonable and that appellee's discharge was for reasons other than misconduct are not supported by substantial evidence. We agree with appellant's first point, and reverse and remand.

On appeal, the findings of fact of the Board of Review are conclusive if they are supported by substantial evidence. Ark. Code Ann. § 11-10-529(c)(1) (1987); *Perdrix-Wang* v. *Director*, 42 Ark. App. 218, 856 S.W.2d 636 (1993). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* We review the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Board's findings. *Id.* Our review is limited to a determination of whether the Board could reasonably reach its decision upon the evidence before it. *Id.*

Appellee was injured while working on appellant's sanitation crew. Appellant's policy required drug testing after a work-related accident that necessitated medical treatment. Appellant's drug test revealed a positive reading for propoxyhene, phenobarbital and butalbital. The policy states that any injured employee testing positive for "any detectable amounts of illegal drugs" or any employee who reports to work or works under the influence of any controlled or illegal substance, except a drug prescribed by a physician to the employee, will be discharged. Appellee signed a consent agreement at the time of his employment to comply with this policy as a condition of employment.

Appellant's personnel manager testified that appellee had not shown any impairment on the job and that appellee's previous drug tests were negative. Appellee was unable to produce a prescription to account for butalbital, and he was discharged

solely for testing positive for a controlled substance not prescribed to him. Appellee stated that about five days before the drug test he was in pain and having taken all of his prescription for Darvocet, a friend had given him a sleeping or pain pill. Appellee said that he did not know what he took, although he believed it was "just like" Darvocet. He did not ask what it was and his friend said it was a painkiller. He was also taking Motrin. A nurse employed by appellant said that Darvocet accounted for the showing of propoxyhene. An employee of the drug testing laboratory testified that over-the-counter medications may result in a positive showing of phenobarbital. The laboratory employee said that the lab toxicologist had not told her that butalbital was contained in over-the-counter medications and so she assumed butalbital, a pain killer, was contained in a prescription drug. The lab employee testified that a pain killer could remain in a person's system up to two weeks. The lab employee stated that none of the positive readings could be attributed to Motrin.

■ Arkansas Code Annotated § 11-10-514(a)(1) (1987) provides that an individual shall be disqualified from benefits if he is discharged from his last work for misconduct in connection with the work. "Misconduct," for purposes of unemployment compensation, involves: (1) disregard of the employer's interest, (2) violation of the employer's rules, (3) disregard of the standards of behavior which the employer has a right to expect of his employees, and (4) disregard of the employee's duties and obligations to his employer. *A. Tenenbaum Co.* v. *Director of Labor*, 32 Ark. App. 43, 796 S.W.2d 348 (1990); *Grace Drilling Co.* v. *Director*, 31 Ark. App. 81, 790 S.W.2d 907 (1990). There is an element of intent associated with a determination of misconduct. Mere good faith errors in judgment or discretion and unsatisfactory conduct are not considered misconduct unless they are of such a degree of recurrence as to manifest culpability, wrongful intent, evil design, or intentional disregard of an employer's interest. *Grace Drilling Co.* v. *Director, supra*; *Sadler* v. *Stiles*, 22 Ark. App. 117, 735 S.W.2d 708 (1987); *Shipley Baking Co.* v. *Stiles*, 17 Ark. App. 72, 703 S.W.2d 465 (1986). Whether the employee's acts are willful or merely the result of unsatisfactory conduct or unintentional failure of performance is a fact question for the Board to decide. *Arlington Hotel* v. *Employment Security Division*, 3 Ark. App. 281, 625 S.W.2d 551 (1981).

The Board found that the evidence did not establish that appellee intentionally disregarded a "standard of behavior the employer had a right to expect." Appellee stated that he took the sleeping/pain pill over the weekend while off work. As the Board stated, "misconduct" connected with the work, i.e., whether appellee's off-duty drug use was a disregard of a standard of behavior his employer had a right to expect, must be determined by applying the principles of *Feagin* v. *Everett*, 9 Ark. App. 59, 652 S.W.2d 839 (1983). In *Feagin*, the court affirmed the Board's finding that a school teacher's off-duty involvement with illegal drugs was violative of a standard of behavior her employer had a right to expect. The court stated that the teaching profession requires a higher standard of its practitioners because school teachers serve as role models for their students. In applying the precepts of *Feagin* to the facts of our case, the Board found that appellant was not entitled to relief, since it had not met her burden of establishing misconduct. The Board also said that appellee took what he thought, albeit incorrectly, was similar to Darvocet (which had been prescribed to him), and that this sleeping/pain pill, received from a friend for which appellee did not have a prescription, was apparently responsible for the butalbital reading. We cannot conclude that the Board's finding that appellee did not violate a standard of behavior is not supported by substantial evidence.

Although appellee did not intentionally disregard a standard of behavior, misconduct may also be found for an intentional violation of the employer's rules. Appellee was not discharged for off-duty conduct, but pursuant to the policy requiring a discharge for any employee testing positive for a detectable amount of a controlled substance without a prescription. The Board did not decide whether appellee intentionally violated the appellant's drug policy because it found that the evidence failed to show that appellant's drug policy was reasonable as applied to the facts of this case. The Board gave the following reasons for this finding. First, the record is devoid of a description of appellee's job duties, thus preventing an analysis like that of *Grace Drilling Company* v. *Director of Labor, supra*, where we held that an employer's drug-free policy was reasonable in light of the dangerous nature of the drilling industry. Second, appellant's stated purpose for its policy, to promote safety and production, is not

met by discharging an employee having trace amounts of an illegal drug regardless of "whether the employee is in fact impaired" and by not discharging an employee who is impaired by a prescription drug. Third, there was no showing that the particular drugs being tested for were drugs that would be detrimental to production or safety. Fourth, that appellant could discharge an employee upon finding any detectable amount of illegal drugs but would only discharge for findings of alcohol greater than a .05 level indicating that the employer recognized that a "trace level of any type of foreign substance in the body does not necessarily establish an impaired condition." Fifth, the Board found it unreasonable that appellant's policy required a drug test following an on-the-job injury because not all injuries are caused by negligence, such as ones caused by the nature of the work. We cannot conclude that the Board's finding that the drug policy was not reasonable is supported by substantial evidence.

 We address the reasonableness of appellant's drug policy because a prerequisite to finding misconduct for violation of an employer's rule is that the rule be reasonable. 81 C.J.S. *Social Security and Public Welfare* §224 (1977); *Pesce* v. *Board of Review Dep't of Employment Security*, 515 N.E.2d 849 (Ill. App. 1987). The dangerous nature of the employer's industry or an employee's job duties, as well as the existence of risk factors, may justify a drug-free policy as reasonable when the policy is implemented to promote safety. *Grace Drilling Company* v. *Director of Labor, supra*. Appellee stated that he worked on appellant's clean-up sanitation crew and his job duties included cleaning machinery. The stated purpose of appellant's policy is to "provide a safe and productive work environment for all its employees." Furthermore, an employer is *not* required to show that the employee is actually impaired in his job performance before he may discharge an employee after a drug test indicates trace amounts of illegal drugs. *Id.* We find it persuasive that such policies have been upheld in other jurisdictions as reasonable. *See Robinson* v. *Dep't of Employment Security*, 637 N.E.2d 631 (Ill. App. 1994); *Singleton* v. *Unemployment Compensation Board of Review*, 558 A.2d 574 (Pa. 1989). In our case, the Board was incorrect to imply that in addition to finding a positive drug test, appellant must also demonstrate that appellee was impaired before appellant's drug-free policy would be reasonable.

■ The Board also stated that the purpose of appellant's drug policy, to provide safety and production, was not promoted by discharging an employee for a trace amount of illegal drugs without any showing of an impaired job performance when under the same policy, a person impaired by prescription drugs would not be discharged. To avoid discharge, appellant's policy required a person impaired by prescription drugs to report his condition to appellant who then prevented him from working. A person who worked without reporting an impairment by prescription drugs could be discharged. This prevention of impaired employees from working is consistent with promoting safety. However, it was unnecessary for appellant to determine that appellee was impaired in his job performance before discharging appellee because appellee's test revealed a detectable amount of illegal drugs; i.e., a controlled substance without a prescription. *Grace Drilling Company, supra.* Illegal drug use brings potential harm to the employer, regardless of the worker's demonstrated impairment, especially when a worker's duties involve exposure to machinery.

■ Moreover, we find persuasive cases from other jurisdictions which have upheld as reasonable drug policies that provide for drug testing following a work-related accident. *McAllister v. Board of Review*, 635 N.E.2d 596 (Ill. App. 1994); *Singleton v. Unemployment Compensation Board of Review, supra.*

■ For the reasons stated herein, we cannot conclude that the Board's finding that appellant's drug policy was unreasonable is supported by substantial evidence. We note that negative drug test results were a condition of appellee's employment to which appellee agreed. *See Szostek v. Unemployment Compensation Board of Review*, 541 A.2d 48 (Pa. 1988). We hold that appellant's drug policy is reasonable and remand for the Board to decide whether appellee intentionally or deliberately violated appellant's drug policy, as that finding must be made by the Board. *W.C. Lee Construction v. Stiles*, 13 Ark. App. 303, 683 S.W.2d 616 (1985).

Reversed and remanded.

JENNINGS, C.J., and MAYFIELD, J., dissent.

MELVIN MAYFIELD, Judge, dissenting. I cannot agree with the majority opinion in this case for two basic reasons.

In the first place, the question involved is whether the appellant's employee, Jimmy Don Wilson, was "discharged from his last work for misconduct in connection with the work." This is the pivotal question that must be answered in order to determine whether Mr. Wilson is disqualified for unemployment benefits under Ark. Code Ann. § 11-10-514 (Supp. 1993).

The majority opinion admits that the factual findings of the Board of Review are conclusive if supported by substantial evidence. However, the opinion selects one element of the Board's factual determination, holds that the Board was wrong in the determination of that element, then remands the other element to the Board for a new determination without even holding that the Board erred in its determination of that element. Even if, as the majority opinion holds, the appellant's drug policy is reasonable — why is it necessary to remand for the Board to decide whether the employee "intentionally or deliberately" violated that policy when the Board has already decided that the evidence does not establish that the employee "intentionally disregarded" the policy?

In reason and logic the Board's decision should be affirmed because there is substantial evidence to support its decision that the appellee employee did not "intentionally or deliberately" violate the appellant's drug policy.

In the second place, I think the majority opinion is wrong in reversing the Board's finding that the appellant's drug policy is unreasonable. There are two aspects of reasonableness involved. One is whether the appellant's drug policy is reasonably related to the employer's business to the extent that the employee's violation of the policy would allow him to be terminated without being eligible for unemployment benefits. Another aspect is whether the policy is being applied in a reasonable manner. These considerations are not specifically discussed in the majority opinion, and the opinion seems to rely upon "public policy" in making a general finding that appellant's drug policy is reasonable.

I think the reasonableness of appellant's drug policy must be measured by the statute which provides that the disqualification for unemployment benefits is for "misconduct in connection with the work." Ark. App. Ann. § 11-10-514 (Supp. 1993). As pointed out in the appellee's brief, in *Hodges v. Everett*, 2 Ark. App. 125, 617 S.W.2d 29 (1981), this court held that it may

well be that an employer is justified in having a rule making any employee engaging in a fight subject to discharge, but the circumstances of the fight — including the right of self-defense — may keep the fight from disqualifying an employee from receiving unemployment benefits. Long before *Hodges* v. *Everett* was decided, the Supreme Court of Arkansas held that the denial of unemployment benefits was not res judicata to a common law action for discharge of an employee in violation of the terms of an employment contract. *Andrews* v. *Victor Metal Products*, 237 Ark. 540, 374 S.W.2d 816 (1964). This is also the general rule. *See* 76 Am. Jur. 2d *Unemployment Compensation* § 81 at 845 (1992) ("the effect of a violation by an employee of a rule relating to employment, warranting the withholding of unemployment compensation benefits on the basis of misconduct, must be determined, not by the employer's rules, but by the provisions of the statute itself."). *See also Cabezes* v. *Administrator*, 557 So.2d 985 (La. App. 1990) ("Whether a violation of the employer's rule, resulting in discharge warrants the withholding of unemployment compensation benefits must be determined, not by the employer's rules, but by the statute.").

As a part of measuring the reasonableness of the employer's drug policy by the statute itself, the policy may be examined to determine if it is unreasonable in its application. An example of this situation is found in *Douthitt* v. *Kentucky Unemployment Insurance Commission*, 676 S.W.2d 472 (Ky. Ct. App. 1984), where the employer contended that it had a policy which required its employees to submit to a polygraph examination upon request. After a periodic inventory of the store managed by the appellant, which revealed a shortage of approximately $1,200, the employer asked its employees to submit to polygraphic testing. The appellant refused and was discharged. The Commission denied appellant unemployment benefits and a circuit court affirmed; however, the appellate court reversed on the holding that even if the policy was in effect it was unreasonable. The court said that polygraph examinations have been held unreliable and it was "unreasonable for an employer to require its employees to submit to an unreliable test for purposes of unemployment compensation benefits." *Id.* at 475.

Here, the majority opinion sets out five reasons given by the Board for finding that appellant's drug policy was unrea-

sonable in this case. The first three reasons clearly demonstrate that the policy has no reasonable *connection* with the work which would allow a violation of the policy to bar unemployment benefits. The fourth and fifth reasons clearly demonstrate that the *application* of appellant's drug policy would be unreasonable in this case.

The majority opinion makes some attempt to demonstrate that there is evidence and law to negate the Board's reasons for holding appellant's drug policy unreasonable, but I think the attempt falls short. *Grace Drilling Company* v. *Director of Labor*, 31 Ark. App. 81, 790 S.W.2d 907 (1990), is cited for its holding that a drug-free policy was reasonable there because of the dangerous nature of the drilling industry, and the majority opinion states that the employee in the case at bar worked on the appellant's clean-up sanitation crew and his job duties included cleaning machinery. But the evidence of the job duties by the appellant here does not come close to establishing an inherently dangerous operation as was involved in the *Grace Drilling Company* case. The opinion in that case states that the office manager for *Grace* testified that its safety program "was initiated due to the high accident rate and risk factors relating to the nature of the drilling business." Here, the only stated reason for the drug policy adopted by the appellant is found in its written policy, which states that it is the company's policy "to ensure that our workplace will be free from drug and alcohol abuse," and adds that it "recognizes it has a responsibility to provide a safe and productive work environment for all its employees."

Clearly, the stated drug policy goes beyond the appellant's concern for the safety of its employees and attempts to "ensure that our workplace will be free from drug and alcohol abuse." The Board noted this in its opinion and said:

> [W]hile aimed at safety and production, it appears that if an employee tries to work but is incapable of working because of a drug which was prescribed to him, that employee would not be subject to disciplinary action. To the contrary, the employer's policy would appear to sanction a discharge for an employee who tests positive at a "trace level" for an "illegal" drug, whether the employee is in fact impaired. Although such a dichotomy might appear

reasonably related to a social, political, or moral position, it does not appear to be so related to a safety or production aim.

The Board, in my opinion, is absolutely correct. The three reasons given by it for finding that appellant's drug policy had no reasonable "connection with the work" included the one disclosed by the above quotation. Another reason is the lack of evidence to show that the employee's work in this case was subject to a high accident rate due to the inherently dangerous nature of the work as was shown in the *Grace Drilling* case. And the third one is that appellant's drug policy failed to show that all drugs for which the employees were tested would be detrimental to safety or production.

In addition, as I have noted, the fourth and fifth reasons given by the Board for finding appellant's drug policy unreasonable relate more to the *application* of the policy than to the *connection* between the policy and the work. The fourth reason pointed out that a "trace level" of a drug would violate the policy, but a "blood alcohol level of .05 or higher would be required for violation." This is not a matter of discrimination by favoring alcohol over drugs but is an indication of a drug policy that fails to disclose how its application has any reasonable connection to the work. The fifth reason given by the Board for holding the appellant's drug policy unreasonable in this case is the requirement of a drug-test following an on-the-job injury. Again the evidence shows no reason for this requirement, and it appears that the application of this requirement would not be reasonable because on-the-job injuries often occur without the employee's fault.

Therefore, I believe that the holding by the Board of Review that the appellant's drug policy was unreasonable is supported by substantial evidence. I would also add that the cases from other states cited by the majority opinion do not persuade me to a contrary view.

In *Robinson* v. *Department of Employment Security*, 637 N.E.2d 631 (Ill. App. 1994), the employee was discharged after failing to pass a drug screening test. Although he "was a good employee whose job performance had not been affected by residual traces of drugs in his urine," the denial of unemployment

benefits was affirmed because he had violated a reasonable work rule. That case is different from the present case in two aspects. One, the Board of Review held that the drug policy in that case was reasonable. Two, that policy had been adopted because it "was mandatory to retain government contracts." *Id.* at 632. It is obvious that a drug policy adopted in order to retain government contracts would be more reasonably related to the business than the one in the case at bar where the only reason given for its adoption is a statement that the employer recognized its responsibility to provide a safe and productive work environment for its employees — but which the Board of Review found more reasonably related to a social, political, or moral position than to a safety or production aim.

The majority opinion also cites two Pennsylvania cases. In *Szostek* v. *Unemployment Compensation Board of Review*, 541 A.2d 48 (Pa. Commw. Ct. 1988), the court affirmed the denial of benefits to an employee who failed to pass a drug test given after the employee was returned to work from a drug rehabilitation program. The court noted the employer's evidence that the employee was allowed to return to work upon the condition that he would remain drug free and would be subject to random testing for drug use. The court also noted the employer's testimony that one of the purposes behind the re-employment condition was to avert additional expense in further drug rehabilitation for the employee. Based on the evidence, the court concluded that the employer's rule for re-employment was reasonable and the employee's willful violation of the rule justified the denial of unemployment compensation.

The other Pennsylvania case, *Singleton* v. *Unemployment Compensation Board of Review*, 558 A.2d 574 (Pa. Commw. Ct. 1989), affirmed the denial of benefits under circumstances similar to those in the *Szostek* case. Singleton worked as a bus driver for a public transit company and was removed from his route for failing to pass a drug test on the very first day he was reinstated to his job. The court said the employer's "inclusion of a drug screen as part of the physical exam is a reasonable test to aid in assessing whether a prospective transporter meets minimum standards necessary to insure the safety of all those who come into contact with the transporting vehicles." *Id.* at 577.

The other out-of-state case cited by the majority on this point is *McAllister* v. *Board of Review*, 635 N.E.2d 596 (Ill. App. 1994). That case, like the *Singleton* case, involved a bus driver for a public transit company who failed a drug test. The test was administered following a work-related accident. In reversing the circuit court decision that had reversed the Board of Review decision (which held that the driver was barred by misconduct from receiving unemployment compensation) the appellate court pointed out that Illinois law required the transit company to establish and enforce a drug testing program consistent with Federal statutes and regulations. To that end, an administrative rule of the Board defined "harm" to the employer and set out the following as one of the examples of such harm:

> "Federal law provides that a commercial carrier may not permit its vehicle to be operated by an individual if there is, within the individual's system, the presence of unlawful, controlled substances beyond a particular level. The presence of such a substance during working hours within the system of a commercial driver employed by the carrier constitutes harm to the carrier. To continue to employ the individual as a driver would result in the carrier's violating federal law."

*Id.* at 598. It is obvious that the facts in *McAllister* are far different from those in the case at bar, including the fact that the appellate court in *McAllister* decided in favor of the decision of the Board of Review, whereas the majority of the appellate court in the instant case has decided to reverse the decision of the Board of Review.

Therefore, I think it clear that the above out-of-state cases, cited by the majority opinion in the instant case, do not support that opinion's conclusion that there is no substantial evidence to support the decision of the Board of Review holding that the appellant's drug policy in the instant case is unreasonable. Other out-of-state cases can be cited to support the view taken by the Board of Review in the instant case. *See Best Lock Corporation* v. *Review Board*, 572 N.E.2d 520 (Ind. App. 1991) (holding there was sufficient evidence to support the Board's decision that the employer's rule bore no reasonable relationship to the employer's business interest). *See also Weller* v. *Arizona Department of*

*Economic Security*, 860 P.2d 907 (Ariz. App. 1990), where the court said "misconduct justifying an employer in terminating an employee and misconduct disqualifying an employee from benefits are two distinct concepts," *id.* at 490, and explained:

> Without requiring evidence that the employer's rule is work-connected, an employer could regulate any aspect of an employee's private conduct that the employer might consider immoral or improper. . . . The company rule must reasonably address a real threat to the employer's legitimate business interests without excessive prying into the bodies and private lives of its employees.

*Id.* at 494.

I would affirm the decision of the Board of Review; therefore, I dissent from the decision of the majority opinion.

JENNINGS, C.J., joins this dissent.