Laurie WHITE *v.* DIRECTOR, Arkansas Employment Security Department and Duff-Norton Yale Hoists Co.

E 94-297                                             924 S.W.2d 823

Court of Appeals of Arkansas
En Banc
Opinion delivered June 26, 1996

*Trotter Law Firm, P.A.*, by: *Scott C. Trotter*, for appellant.

*Ronald A. Calkins*, for appellee Director.

*Friday, Eldredge & Clark,* by: *James W. Moore* and *Andrew T. Turner,* for appellee Duff-Norton Yale Hoists Co..

JAMES R. COOPER, Judge. The appellant in this unemployment compensation case was employed by the appellee, Duff-Norton Yale Hoists Co., on February 3, 1994. On that date she consented to be tested for drug abuse pursuant to the employer's policy. The employer asserted that her test was positive, and she was subsequently discharged for failure to comply with company policy regarding actions to be taken following a positive drug test. After a hearing, the Board of Review found that the appellant was disqualified for unemployment benefits because she had been discharged for misconduct connected with the work. From that decision, comes this appeal.

For reversal, the appellant contends that there is no substantial evidence to support the Board's finding that she was discharged for misconduct connected with the work. We do not agree, and we affirm.

■ On appeal, the findings of fact of the Board of Review are conclusive if supported by substantial evidence, i.e., by such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *George's Inc.* v. *Director,* 50 Ark. App. 77, 900 S.W.2d 590 (1995). Our review is limited to determining whether the Board could reasonably reach its decision upon the evidence before it, and in making that determination, we review the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Board's findings. *Id.*

Viewed in that light, the record shows that the employer's drug policy required employees testing positive for drug use to accept treatment for substance abuse; failure to accept treatment was expressly provided to be insubordination subjecting the employee to discharge. In the event that an employee should disagree with the test results, the policy permitted a second test to be performed at employee expense, using the original specimen, within 30 days of the original test.

■ In the case at bar, there was evidence that the employer notified the appellant that a positive result was obtained on her drug test, and that the appellant neither obtained a retest within 30 days nor accepted treatment pursuant to the employer's policy. Although there was evidence that would support a finding that the appellant

had not been insubordinate, the scope of our review is limited to determining whether the Board could reasonably reach its decision on the evidence before it. *Perry* v. *Gaddy*, 48 Ark. App. 128, 891 S.W.2d 73 (1995). We hold that it could, and consequently, we must affirm.[1]

Affirmed.

JENNINGS, C.J., and STROUD, J., agree.

MAYFIELD, NEAL, and GRIFFEN, JJ., dissent.

MELVIN MAYFIELD, Judge, dissenting. I agree with, and join in, the dissenting opinion of Judge Griffen in this case. Also, I want to make the following remarks which demonstrate, in my view, that the Board of Review's decision should be reversed.

Laurie White was denied unemployment benefits for eights weeks on a finding that she was discharged from last work for misconduct connected with the work because her urine was positive for amphetamines in violation of the employer's alcohol and drug abuse policy.

The employer, Duff-Norton Yale Hoists, and the Steelworkers Union, had negotiated an alcohol and drug abuse policy which took effect on September 18, 1992. The policy states its purpose as "to provide a safe and productive work environment for all employees," and to "make every effort to have a drug and alcohol free workplace and workforce." [sic] The policy provided that managers and supervisors who had probable cause to suspect that an employee was under the influence of alcohol or controlled substances, or had illegal drugs or alcohol in his or her possession, could ask the employee to take a drug and/or alcohol test. The policy further provides that an employee refusing a test can be discharged, but after a "first time positive result" an employee will be offered rehabilitation, and refusal to accept treatment will be viewed as insubordination and will subject the employee to discharge. And the policy provides that employees disagreeing with test results can, at the employee's expense, have the sample analyzed again. Appellant Laurie White signed an acknowledgment that she had received a

---

[1] The "facts" referred to in the dissenting opinions, it should be noted, were not facts found by the Board, but consist instead of evidence that the Board had before it to accept or reject. The Board rejected that evidence.

copy of the drug policy on September 24, 1992.

On February 3, 1994, while appellant was off on sick-leave, she was asked to submit a urine specimen for a drug-screening test. Appellant testified at one of the hearings that the personnel manager, Martha Lucas, told her that two doctors had informed her that appellant was "chemically dependent." Appellant signed the consent form at 3:05 p.m. and went to a laboratory in Forrest City to submit a urine specimen. The report from the Forrest City Laboratory states that the collection date was February 3, 1994, at 1600 hours. According to appellant she gave her urine sample to the nurse in an open container and the nurse did not seal it in front of her. Appellant said she did not know what the nurse did with the sample.

On February 14 appellant was told that her urine tested positive for amphetamines. Appellant testified that she had never taken any amphetamines but admitted she was on several prescription drugs, although the only ones she could name were Prozac and Tranzen. Appellant related that she asked Ms. Lucas if she could get another test done and was told she could not. She said Ms. Lucas told her she could either go into a rehabilitation program or be fired. Appellant said she also asked for another test on the original specimen, which was permitted by the written alcohol and drug policy of the company, but Ms. Lucas also told her she could not do that either.

Appellant then hired an attorney, who was apparently able to get the original urine specimen sent to another laboratory, Roche Biomedical Laboratories in Southhaven, Mississippi. The result was sent to appellant's family physician, Dr. Collins Morgan, and is entered into the record. That report also shows appellant's urine was positive for amphetamines.

The record contains the handwritten notes of Ms. Lucas, dated February 1 through 3, 1994, in which she explains that appellant was attempting to check into Greenleaf Hospital in Jonesboro, a psychiatric hospital, for treatment of anorexia. They offered to admit her to the alcohol and drug dependency unit but appellant refused, claiming that she was not drug dependent. These notes also say that appellant was advised that they wanted her to take a drug test, "based upon her absentee record, crying at her work place for no apparent reason, frequent trips to the bathroom."

After a hearing before the Appeal Tribunal, it issued an opinion, dated September 29, 1994, which held that the employer had failed to prove that the claimant had amphetamines in her system in light of her consistent denial that she had ever used amphetamines. The referee said the employer did not present sufficient chain of custody evidence that the results from the laboratory were actually from the urine specimen given by claimant because the employer offered no information on what happened to the claimant's open container of urine between the time the claimant handed it to a hospital employee and when the employer received the original test results. The Appeal Tribunal allowed benefits, but the employer appealed to the Board of Review.

On November 23, 1994, the chairman of the Board of Review issued an opinion in which he held that the appellant was discharged from her last work for misconduct connected with the work. The chairman's opinion states, in part:

> Based on the evidence, the Board of Review finds that the claimant was discharged from last work for misconduct connected with the work. . . . What is controlling is the claimant's failure to abide by the employer's policy and comply with provisions once the employer asserted that it had an initial positive test. One option for the claimant was to enter a rehabilitation program. It is understandable that the claimant would not desire to do so when asserting that the initial test result was erroneous. The other option for the claimant was to effectively pursue, under the employer's policy, retesting of the original specimen. . . . Even if possibly dilatory, the claimant began such a pursuit. However, she did not successfully follow through with that pursuit, and the evidence fails to establish that the employer contributed to the failure of the claimant to successfully complete that option. The Board particularly notes the lack of evidence about what the claimant did after allegedly learning on March 11 that the initial specimen had (purportedly) been destroyed. The evidence does not establish that she did anything, and she should not now be heard to complain about any alleged shortcoming of the employer in administering its policy.

Appellant argues on appeal that "the decision of the Board of Review is not supported by substantial evidence and is contrary to law in that (1) the Board failed to specify what conduct constituted

misconduct according to recognized legal standards and (2) the claimant's actions did not constitute misconduct in connection with work." Appellant submits that because she did not refuse to give a urine specimen for testing and because the employer failed to offer competent evidence of the chain of custody or the procedures of testing and result, it is impossible for the employer to prove the drug policy was violated. Appellant argues that the drug policy and Ms. Lucas's testimony show that to terminate appellant for insubordination for refusing rehabilitation there must have been a positive drug test followed by the same result on a second test on the same sample and then refusal of rehabilitation. Since there was a delay in the second testing of the original sample and the employer then failed to offer appellant rehabilitation before terminating her for insubordination, she was discharged for a reason not constituting misconduct connected with the work.

I think the Board's finding that the appellant failed to follow through on the retest after being told the original specimen had been destroyed is inadequate. The Board has not found conduct of the appellant that was a wilful (1) disregard of the employer's interest, (2) violation of the employer's rules, (3) disregard of the standards of behavior which the employer had a right to expect of his employees, or (4) disregard of the employee's duties and obligations to his employer. *A. Tenenbaum Co. v. Director of Labor*, 32 Ark. App. 43, 796 S.W.2d 348 (1990); *Grace Drilling Co. v. Director*, 31 Ark. App. 81, 790 S.W.2d 907 (1990). There must be an element of intent associated with a determination of misconduct. Mere good faith errors in judgment or discretion and unsatisfactory conduct are not considered misconduct unless they are of such a degree of recurrence as to manifest culpability, wrongful intent, evil design, or intentional disregard of an employer's interest. *Grace Drilling Co. v. Director, supra; Sadler v. Stiles*, 22 Ark. App. 117, 735 S.W.2d 708 (1987); *Shipley Baking Co. v. Stiles*, 17 Ark. App. 72, 703 S.W.2d 465 (1986). There has been no finding whatsoever and, indeed, there is no evidence in the record to support such a finding, that appellant has been guilty of conduct that would fit the above definition of employee misconduct.

I would reverse and remand.

NEAL and GRIFFEN, JJ., join in this dissent.

WENDELL L. GRIFFEN, Judge, dissenting. Although the major-

ity views this case as turning on the fact that appellant "neither obtained a retest within 30 days nor accepted treatment pursuant to the employer's policy" in case of a positive result from an employee's drug test, the clear and uncontradicted proof is that the employer never provided the original specimen within 30 days of the original test. The plain proof is that the appellant disputed the positive drug test, challenged the chain of custody for the original sample, and was told by the personnel manager for appellee that her options were to either enter rehabilitation or be fired. Appellant also testified that she tried to persuade the employer to retest the original sample, but that the personnel manager rejected that request. Furthermore, the personnel manager (Martha Lucas) testified that she did not receive the original test result until the day before the second hearing before the Appeal Tribunal. Neither she nor anybody else associated with the employer have produced the original test specimen so that the appellant's right to obtain a retest could be honored.

The personnel manager testified that appellant had missed quite a number of days from work before February 3, 1994, and there appears to have been some concern that she needed or was contemplating psychiatric hospitalization at that point in time. Although the personnel manager testified that the contemplated hospitalization may have been for treatment of anorexia, there is no verification that appellant was diagnosed with that condition in the record. At any rate, the personnel manager informed appellant that she would be scheduled for a drug test due to her perceived absenteeism problem. Appellant went to the lab at Baptist Hospital in Forrest City on February 3, 1994, and provided a urine specimen, pursuant to directions from the personnel manager who had told her that unless she did so she would be fired immediately. Appellant's undisputed testimony is that she did not seal, initial, or otherwise label the urine specimen and that she did not see anyone else do so. The personnel manager testified that she does not know what happened to the urine specimen, but that the specimen produced a positive result for presence of amphetamines and that appellant was fired because she did not produce a negative result upon retesting of the original specimen. Thus, appellant was terminated for alleged noncompliance with appellee's drug policy in what appears to have been a blatant violation of that policy by her employer. Now our court has decided to uphold the denial of her claim for unemployment benefits based upon the view that there is substantial evidence

supporting the Board of Review's decision that she was discharged from her job because of misconduct connected with the work.

The Arkansas Supreme Court has stated that in keeping with the declaration of the state public policy of providing benefits to workers who are unemployed through no fault of their own, the statutory misconduct provision of the unemployment compensation law must be given an interpretation consistent with that declared policy, and that it should not be so literally construed as to effect a forfeiture of benefits by an employee except in clear cases of misconduct. *Willis Johnson Co. v. Daniels*, 269 Ark. 795, 601 S.W.2d 890 (1980). While various definitions of the term "misconduct" have been given by Arkansas courts, it appears generally accepted that a finding of "misconduct" will attach only to conduct evincing an intentional or deliberate violation of employer rules, a willful or wanton disregard, or carelessness or negligence of such degree or recurrence as to manifest wrongful intent or evil design. *Hillman v. Arkansas Hwy. & Transp. Dep't*, 39 F.3d 197 (8th Cir. 1994); *see also A. Tennenbaum Co. v. Director of Labor*, 32 Ark. App. 43, 796 S.W.2d 348 (1990); *Edwards v. Stiles*, 23 Ark. App. 96, 743 S.W.2d 12 (1988).

It is true that the issue of misconduct is a question of fact for the Board of Review, and that, on appeal, the Board's findings are conclusive if supported by substantial evidence. *A. Tennenbaum Co., supra*. The problem with the Board's findings in this case is that any holding of misconduct must rest upon a finding that appellant failed to comply with the employer's drug testing policy requiring her to produce a negative result from the original specimen that produced the positive result. All the evidence on the issue shows that the employer never produced the original specimen for appellant to retest. The employer selected the testing agency. It had the duty to make the original specimen available to appellant so that she could exercise her right to have it retested in connection with her challenge to the positive finding. Having failed to safeguard the original specimen so as to make it available for retesting pursuant to its own policy, the employer is in no position to use appellant's failure to produce a negative result upon a retest that the employer knows cannot be obtained to justify her dismissal.

Stripped of its obligatory references to the standard of review, this result stands for the proposition that an employee can be found guilty of misconduct so as to be disqualified from entitlement to

unemployment benefits where the employer accuses her of violating its drug policy based upon a positive drug test from a specimen that nobody has identified and which the employer cannot find. As if that were not enough, the prevailing opinion also holds that where the employer has deprived the employee of the chance to retest the original specimen, the employer may successfully assert the employee's failure to produce a negative result upon retesting as "misconduct." I cannot agree that fair-minded persons confronted with these facts would characterize appellant's failure to produce a negative result from a specimen that her employer has failed and/or refused to produce for retesting as intentional or deliberate disregard of her job duties and obligations or the employer's interests. Moreover, I reject the notion that the Arkansas General Assembly intended that employees should forfeit their right to unemployment compensation benefits on account of misconduct due to plain proof of such suspicious behavior by an employer.

NEAL and MAYFIELD, JJ., join in this dissent.