Sherman RUCKER *v.* Phil Price, DIRECTOR, and
Townsends of Arkansas, Inc.

E 94-223                                                 915 S.W.2d 315

Court of Appeals of Arkansas
En Banc
Opinion delivered February 21, 1996

*Appellant,* pro se.

*Allan Pruitt,* for appellees.

JUDITH ROGERS, Judge. The Board of Review affirmed and adopted the decision of the Appeal Tribunal disqualifying appellant, Sherman Rucker, from receiving unemployment compensation benefits based on a finding that he was discharged for misconduct connected with the work. In this unbriefed appeal, the issue before us is whether the Board's decision is supported by substantial evidence. We hold that it is so supported, and affirm.

Appellant was employed by Townsends of Arkansas, Inc. In October of 1990, Townsends implemented a chemical substance and alcohol abuse policy with the goal of establishing a drug-free workplace. When appellant was hired in April of 1991, he signed a consent form agreeing to abide by the terms and conditions of the policy. Townsends' policy did not provide for random drug testing; however, testing was required of applicants seeking employment and of employees who were reasonably suspected of being under the influence of illegal drugs, controlled chemical substances and alcohol. Testing was also required of employees who were injured on the job, when the injury required treatment by a physician. The policy contained a listing of prohibited substances and set out levels of those substances, and alcohol, which would not be permitted. The policy called for the automatic termination of an employee whose test yielded such a positive result, although employees were given the opportunity for a second test, at their own expense.

Appellant worked as a trainer in the wing department. On June 1, 1994, a Wednesday, he sliced his hand with a knife while cutting a cardboard box. Seven stitches were required to repair the injury. On the day of the accident, appellant submitted a urine sample for testing. He was fired, effective June 7, 1994, for failing to pass the test. It was said that the test revealed

a positive result for a non-prescription, controlled substance. However, in keeping with the company's policy of confidentiality, the particular drug was not named. Appellant did not request a second test.

Appellant testified of his awareness of the drug policy, including the provision calling for automatic termination should he fail a drug test following a work-related injury. He denied that he had taken any drugs on the day of the accident, but he said that he had "smoked a joint" during the Memorial Day weekend.

On this evidence, the Board ruled that appellant was discharged for misconduct connected with the work, finding that he had violated a company rule and that his conduct was in disregard of his employer's interest. The Board, declined, however, to deny benefits under Ark. Code Ann. § 11-10-514(b) (Supp. 1993), which provides for further disqualification for reporting to work under the influence of intoxicants, including controlled substances.

On appeal, the findings of facts of the Board of Review are conclusive if they are supported by substantial evidence. *Perdrix-Wang* v. *Director*, 42 Ark. App. 218, 856 S.W.2d 636 (1993). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* We review the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Board's findings. *Id.* Our review is limited to a determination of whether the Board could reasonably reach its decision upon the evidence before it. *Id.*

Arkansas Code Annotated § 11-10-514(a) (Supp. 1993) provides that an individual shall be disqualified for benefits if he is discharged for misconduct in connection with the work. "Misconduct," for purposes of unemployment compensation, involves: (1) disregard of the employer's interest; (2) violation of the employer's rules; (3) disregard of the standards of behavior which the employer has the right to expect; and, (4) disregard of the employee's duties and obligations to his employer. *George's Inc.* v. *Director*, 50 Ark. App. 77, 900 S.W.2d 590 (1995). There is an element of intent associated with a determination of misconduct. Mere good faith errors in

judgment or discretion and unsatisfactory conduct are not considered misconduct unless they are of such a degree of recurrence as to manifest culpability, wrongful intent, evil design, or intentional disregard of the employer's interest. *Id.* Whether an employee's acts are willful or merely the result of unsatisfactory conduct or unintentional failure of performance is a fact question for the Board to decide. *Id.*

■ At the hearing, appellant argued that he should not be penalized for his off-duty conduct. At first blush, such an argument brings to mind our decision in *Feagin* v. *Everett,* 9 Ark. App. 59, 652 S.W.2d 839 (1983). In *Feagin,* we recognized that misconduct *in connection with the work* can occur while an employee is off duty. There, a teacher was fired after criminal charges had been filed against her for the possession of a controlled substance, which had been found in her home. In affirming the Board's finding of misconduct, we adopted a three-part test for determining whether an employee's off-duty conduct will be considered misconduct in connection with the work. First, there must exist a nexus between the employee's work and his or her off-duty activities. Second, it must be shown that the off-duty activities resulted in harm to the employer's interests. And third, the off-duty conduct must be violative of some code of behavior contracted between the employer and employee, and the employee's conduct must be done with the intent or knowledge that the employer's interests would suffer.

■ The decision in *Feagin* v. *Everett, id.,* however, does not govern our review of the instant case. We have recognized that misconduct may also be found for the intentional violation of an employer's rules. In *Grace Drilling Co.* v. *Director,* 31 Ark. App. 81, 790 S.W.2d 907 (1990), the employer had developed a safety program which included drug testing on a random basis. The policy prohibited employees from having "any detectable level of alcohol, drugs, or controlled substances, or any combination thereof, in the body." The employee was discharged after failing a drug test. The Board of Review awarded unemployment compensation benefits. We reversed, holding that the employee's actions constituted misconduct in connection with the work in that the employee's positive test result represented a deliberate violation of the employer's rules, as well as a willful disregard of the standard of behavior which the employer had a

right to expect. More recently, we decided the case of *George's Inc.* v. *Director*, 50 Ark. App. 77, 900 S.W.2d 590 (1995). The employer in that case had also adopted a drug policy, and the employee was fired after testing positive for a detectable amount of a controlled substance which had not been prescribed to him. We disagreed with the Board's conclusion that the employer's drug policy was not reasonable[1], and we held that the employee was discharged for the violation of the employer's rules. We remanded for the Board to make a finding of fact as to whether the employee's violation of the employer's rule was intentional, since the Board had not addressed that pivotal issue.

In reviewing this case, we are guided by the decisions in *Grace Drilling Co.* v. *Director, supra,* and *George's Inc.* v. *Director, supra.* We conclude that appellant was not discharged for off-duty conduct, but that he was terminated pursuant to the employer's policy requiring the discharge of any employee who tested positively for drugs in excess of the designated tolerance levels. As appellant's conduct was in violation of the employer's rules, we hold that he was discharged for misconduct in connection with the work. Noting that appellant had agreed to be bound by the policy and that he was thus aware of its terms and the ramifications for failing a test, the Board found that appellant's conduct was intentional. We cannot say that the Board's decision of disqualification is not supported by substantial evidence.

Affirmed.

BULLION, S.J., agrees.

MAYFIELD and ROBBINS, JJ., dissent.

---

[1] In *Grace Drilling Co.* v. *Director, supra,* we observed that it was not unreasonable for the employer to implement a drug policy given the dangerous nature of employer's business. In *George's Inc.* v. *Director, supra,* we stated that a prerequisite to finding misconduct for the violation of an employer's rule is that the rule be "reasonable." The record in this case contains no evidence describing Townsends' business or appellant's job duties. In sum, no argument was made below challenging the reasonableness of Townsends' drug policy. We thus do not consider this question as being within the realm of contested issues, and thus we can offer no opinion on the matter. This court does not consider issues raised for the first time on appeal. *Perdrix-Wang* v. *Director*, 42 Ark. App. 218, 856 S.W.2d 636 (1993).

COOPER, J., not participating.

MELVIN MAYFIELD, Judge, dissenting. I cannot agree to affirm the decision of the Board of Review in this case. The Board found that the decision of the Appeal Tribunal was "correct, both as to findings of fact and conclusions of law," and stated: "That decision is hereby adopted as the decision of the Board of Review." Therefore, we must focus on the decision of the Appeal Tribunal, the gist of which is found in the following paragraphs.

> The claimant admits that he smoked marijuana approximately two days before the test was given. He argues that the employer has no right to determine what an employee can or cannot do on his own time. *However, the law does give the employer the right to implement a drug and alcohol policy and to discharge an employee who fails to observe the policy.* The claimant testified that he was aware of the policy, and was aware that he would be discharged if he tested positive. He admits he knew this before he chose to use a controlled substance. While an employer may not have the right to dictate an employee's personal life, the employer does have the right to take action against the employee when his personal life is carried over into his employment. The claimant knew the possible consequences of his actions, and chose to take that risk. He lost. His actions indicate an intentional disregard for the employer's interests. Therefore, the claimant was discharged for misconduct in connection with the work.

> The employer failed to indicate to what extent the claimant tested positive. As a result, the Tribunal can not reach a determination as to whether or not the claimant reported while under the influence. Although the claimant admits that he smoked marijuana approximately two days before the test, this does not establish the extent of the influence when he reported to work. Ark. Code Ann. § 11-10-514(b) disqualifies a claimant for a longer period if the employee reports to work under the influence. In this case, the evidence does not support such a finding. That section of law does not indicate that the mere use of narcotics should lead to the greater disqualification.

> *Therefore, the claimant was discharged for misconduct,*
> *but not on account of reporting to work while under the*
> *influence of a controlled substance.*

(Emphasis added.)

It is important to note that the last sentence in the second paragraph actually finds that the appellant was not discharged for misconduct "on account of reporting to work under the influence of a controlled substance." Therefore, the denial of unemployment benefits to appellant is based solely on findings made in the first paragraph, and one of those findings would allow an employer to discharge an employee who uses a controlled substance while *not at work* and who *does not report to work* under the influence of such substance.

This point was specifically raised by the appellant who told the referee at the Appeal Tribunal hearing that he had "smoked a joint during the Memorial Weekend" but also said, "I don't feel that should have anything to do with my job though." The referee, however, thought differently and said in her findings in the first paragraph quoted above: "However, the law does give the employer the right to implement a drug and alcohol policy and to discharge an employee who fails to observe the policy."

In the first place, taken in its compete and unlimited sense, this statement is wrong. No authority is cited by the referee, by the Board, or by the majority opinion to support this statement in its complete and unlimited sense. It is true that in June of 1994, when appellant was tested positive for a controlled substance, Ark. Code Ann. § 11-10-514(b) (Supp. 1995) was in effect and provided that an employee shall be disqualified for unemployment benefits if he is discharged for misconduct for "reporting for work while under the influence of . . . a controlled substance, or willful violation of the rules or customs of the employer pertaining to the safety of fellow employees or company property . . . ." But the Appeal Tribunal specifically found that the appellant *did not report to work under the influence* of a controlled substance. So, that provision does not apply here.

I will discuss later the provision about the willful violation of the rules or customs of the employer, but now I want to finish the point that the Appeal Tribunal erred in making the unquali-

fied statement that the law gives an employer the right to implement a drug policy and discharge an employee who violates it. Of course, the employer has such a right if we put aside the consequences of such action as it relates to the entitlement of unemployment benefits. An employee can be fired, but such employee will be entitled to unemployment benefits unless we factor into that statement some conditions or limitations.

The majority opinion does not attempt to support the referee's unlimited and unconditional statement that the employee has the right to adopt a drug policy and discharge an employee who fails to observe it, but does cite *George's Inc.* v. *Director*, 50 Ark. App. 77, 900 S.W.2d 590 (1995), which held that such a policy was reasonable in that case. However, that opinion, in its opening paragraph, states that the appellant there argued that the Board of Review's finding that the drug policy in that case was unreasonable was not supported by substantial evidence. This court agreed that the Board was wrong in finding the policy unreasonable in that case. But that is not the issue now under discussion. At this point, I am discussing the finding of the Appeal Tribunal, adopted by the Board of Review, which stated *without qualification* that "the law does give the employer the right to implement a drug and alcohol policy and to discharge an employee who fails to observe the policy." I contend that this finding is wrong if it means that this finding alone will disqualify an employee from receiving unemployment benefits. The law simply does not give an employer such an unlimited right.

Moreover, the fact that an employee agrees to such a policy does not waive the employee's right to unemployment compensation. This is true for the simple reason that the Arkansas Employment Security Law so provides. Ark. Code Ann. § 11-10-107(a) (1987) clearly states that "Any agreement by an individual to waive, release, or commute his rights to benefits or any other rights under this chapter shall be void."

Therefore, I think the Board was clearly wrong in holding that this decision of the Appeal Tribunal was "correct, both as to the findings of fact and conclusions of law."

I now return to that part of Ark. Code Ann. § 11-10-514(b) (Supp. 1995) which provides that an employee shall be disqualified for unemployment benefits if he is discharged for a "willful

violation of the rules or customs of the employer pertaining to the safety of fellow employees or company property." It should be noted that this is a very narrow provision, and it does not appear to be relied upon to support the majority opinion. As I read the majority opinion, it relies upon Ark. Code Ann. § 11-10-514(a) (Supp. 1995) (both the 1993 and 1995 supplements contain the same provisions as far as section 11-10-514 is concerned). The provision in subsection (b) that states "or willful violation of the rules or customs of the employer pertaining to the safety of fellow employees or company property" may relate to *reporting for work* under the influence of "intoxicants including a controlled substance," and in that case it has no relevance here because the Appellee Tribunal found that the evidence did not support a finding that the appellant reported to work while under the influence of a controlled substance.

However, if this provision includes an employee who reports to work — not under the influence of intoxicants or a controlled substance but, as applied to this case, in such a condition that he tests positive for a controlled substance in willful violation of a rule or custom of the employer pertaining to the safety of fellow employees or company property — then we must focus upon the rule as it applies to the "safety" of the fellow employees and company property. Thus, the Appeal Tribunal's findings, adopted by the Board, that "the law does give the employer the right to implement a drug and alcohol policy and to discharge an employee who fails to observe the policy" is not sufficient to deny benefits to the appellant in this case because the finding does not reach the safety issue, and there is no evidence in the record on that point.

At this point, however, I want to discuss the application of both Ark. Code Ann. § 11-10-514(a) and (b) to this case. Of course, it is subsection (a) that is relied upon by the majority, but both subsections are properly considered together at this point. And in that connection, I note that there is a finding by the Appeal Tribunal that does come close to being a correct statement of the law and which relates to the appellant's contention that the "joint" he smoked "during the Memorial Weekend . . . should not have anything to do with my job." This statement, which appears in the first paragraph quoted at the beginning of this dissent is as follows:

> While an employer may not have the right to dictate an employee's personal life, the employer does have the right to take action against the employee when his personal life is carried over into his employment.

Although I do not think this is an exact statement of the law, it is close enough for us to reach the real issue in the case — which I submit the majority has failed to do.

The case of *Feagin* v. *Everett*, 9 Ark. App. 59, 652 S.W.2d 839 (1983), is cited by the majority in response to appellant's argument that "he should not be penalized for his off-duty conduct," but the majority rejects its application to the instant case by stating that it "does not govern our review of the instant case." The apparent rationale for this conclusion is the next statement — "we have recognized that misconduct may also be found for the intentional violation of an employer's rules," and *Grace Drilling Co.* v. *Director*, 31 Ark. App. 81, 790 S.W.2d 907 (1990), is cited in support of this last statement.

This reference to the *Feagin* and *Grace Drilling* cases clearly demonstrates the failure of the majority to understand that the law does not allow an employer to simply adopt a rule and provide that the failure of an employee to observe that rule will disqualify the employee from receiving unemployment benefits. The Arkansas Employment Security Law must agree that a violation of that rule will disqualify an employee from receiving unemployment benefits. The law in this regard is clear. In *Hodges* v. *Everett*, 2 Ark. App. 125, 127, 617 S.W.2d 29, 31 (1981), in reversing the denial of unemployment benefits, we said:

> It may well be that the employer is justified in having a rule making any employee engaging in a fight subject to discharge, but the existence of such rule does not necessarily mean that the discharged employee is guilty of misconduct within the meaning of the Arkansas Employment Security Law.

This is also the general rule. *See* 76 Am. Jur. 2d *Unemployment Compensation* § 81 at 845 (1992), stating that "the effect of a violation by an employee of a rule relating to employment, warranting the withholding of unemployment compensation benefits

on the basis of misconduct, must be determined not by the employer's rules, but by the provisions of the statute itself."

However, *Feagin* and *Grace Drilling* are cases where the Arkansas Unemployment Security Law was in agreement with the denial of unemployment benefits to employees who were fired for the violation of an employer's rule.

In *Feagin* the court affirmed the Board of Review's denial of unemployment compensation to a school teacher who was discharged because law enforcement officers found drug paraphernalia, marijuana, and hash oil in a house where the teacher and her husband lived. In discussing what would constitute misconduct in connection with an employee's work (under what is now Ark. Code Ann. § 11-10-514) when the claimant was off-duty, we said that case was one of first impression. Relying on the Washington Supreme Court case of *Nelson* v. *Employment Security Department*, 98 Wash. 2d 370, 655 P.2d 242 (1982), we adopted a four-prong test that required that the employee's conduct must (1) have a nexus with her work; (2) result in some harm to the employer's interest; (3) be conduct violative of some code of at least an implied contract of behavior; and (4) done with the intent or knowledge that the employer's interest would suffer. We found that those elements were present in *Feagin* and affirmed the denial of benefits. Of interest, in connection with the present case, is the testimony in *Feagin* of the school superintendent that even though the drugs and drug paraphernalia were found in the teacher's house — something away from the school and concerned with her off-duty activities — he thought this would hinder the teacher's effectiveness and meet the provision in the school policy manual that allowed dismissal for undesirable personal traits.

No such evidence exists in the instant case. Actually, the evidence in this case does not clearly reveal the business in which the employer was engaged. There is in evidence a document entitled "Chemical Substance and Alcohol Abuse Policy." The "policy" statement set out in that document states that a violation of "this rule" occurs by "Reporting to work or for Company business, and in a condition not conducive for work due to the use of drugs or alcohol. . . ." The employer's adopted "Chemical Substance and Alcohol Abuse Policy" is stated to be: "In order

to have a safe and efficient work environment and to comply with the Federal Drug-Free Workplace Act (Title 41 USCA 701-707). . . ." And it adds that "Reporting to work or for Company business, in a condition not conducive for work due to the use of drugs or alcohol is prohibited. . . ."

The specific situation to which the employer's policy was applied here is explained as follows:

> Mr. Rucker was cutting a cardboard box and stated that the blade slipped and he cut himself. The incident was in a nature which caused Mr. Rucker three separate injuries for the same accident.

There is no explanation of the "three separate injuries for the same accident" statement unless it is disclosed by this statement that follows: "Mr. Rucker was sent for medical attention (seven stitches) and drug testing."

And the only indication of the nature of the employer's business was given by Larry King, who testified as the employer's representative, and said that the appellant "was in the wing department" and that "I assume the wing department is, could arrange [sic] anywhere from grading wings, cutting wings to support department for the wings, which means collecting packing material, boxes, etc." The appellant testified that his job was "basically a trainer." And his statement filed with the agency in making his claim for benefits states that his job and duties were "To set up the department so it would be ready for 2nd shift employee [sic] to start work. (Trainer)."

Thus, it seems clear to me that the evidence here will not support the rationale under which the *Feagin* case was decided and the majority opinion is correct in stating that it "does not govern our review in the instant case." But the majority is inconsistent by then citing the *Grace Drilling* case to support the majority's statement that "we have recognized that misconduct may also be found for the violation of an employer's rules." Just as *Feagin* could properly find, under the evidence there, that the teacher's off-duty activities constituted misconduct because it affected her on-duty work, the *Grace Drilling* case could properly find, under the evidence there, that testing positive for drugs when reporting for work affected the employee's on-duty work

because the testing policy was "initiated due to the high accident rate and risk factors relating to the nature of the drilling business and the desire to ensure the safety of the drilling crews." *See* 31 Ark. App. at 84, 790 S.W.2d at 908. The rationale in both cases is found in the effect that off-duty conduct has on the employee's work.

Therefore, it comes as no surprise to find that Ark. Code Ann. § 11-10-514 (Supp. 1995) provides that an employee who is discharged from work is disqualified for unemployment benefits *if* the discharge is for misconduct *in connection with the work*. That is the point, and there are no exceptions. And that is the rationale of both *Feagin* and *Grace Drilling*. Although *Grace Drilling* is factually more like the instant case — the off-duty use of drugs caused the positive test — the issue is the same. However, because of evidence about the "high accident rate and the risk factors relating to the drilling business" the safety of the drilling crews in *Grace Drilling* supported the decision that failing the drug test was misconduct. Here, there is no evidence that there was a safety problem that would support such a decision.

As indicated above, the only evidence here to explain why the testing policy was adopted is contained in the policy itself: "In order to have a safe and efficient work environment and to comply with the Federal Drug-Free Workplace Act (Title 41 USCA 701-707)." Section 701 of that Act provides that contractors with the federal government must (except for services of a limited value) meet the Act's requirement for a drug-free workplace. *See Robinson* v. *Department of Employment Security*, 637 N.E.2d 631 (Ill. App. 1994) (policy adopted because it "was mandatory to retain government contracts"). But there is no evidence that the employer here did any business with the federal government.

In *George's Inc.* v. *Director*, 50 Ark. App. 77, 900 S.W.2d 590 (1995), this court determined that the employer's drug policy was reasonable but remanded the case to the Board of Review for it to determine if the employee intentionally or deliberately violated that policy. I think the real issue is not whether the policy is reasonable but whether a violation of the policy constitutes misconduct in connection with the work. There is, how-

ever, an element of the reasonableness question involved in the real issue. However, even the question of the reasonableness of the employer's policy in this case is avoided by the majority opinion's footnote that says that issue was not raised below. If the *pro se* appellant's statement at the Appeal Tribunal hearing that he did not "feel" that the "joint" he smoked during the Memorial Weekend "should have anything to do with my job" did not raise the issue here, I do not see how a *pro se* appellant has any real chance of ever reversing a decision of the Board of Review.

I dissent.

ROBBINS, J., joins in this dissent.