Mike P. CUSACK *v.* Artee WILLIAMS, Director, Department of Workforce Services and University of Central Arkansas

E 08-20 286 S.W.3d 180

Court of Appeals of Arkansas
Opinion delivered June 25, 2008

 

Appellant, pro se.

*Allan Pruitt*, for appellee Department of Workforce Services; and *Thomas C. Courtway*, for appellee University of Central Arkansas.

KAREN R. BAKER, Judge. Appellee University of Central Arkansas discharged appellant Mike P. Cusack from his position as a shuttle bus driver after it received notice that Mr. Cusack tested positive for marijuana on a drug screening test performed pursuant to the Department of Transportation's regulation of individuals maintaining a commercial driver's license. The Board of Review found that the employee's failing the drug test for the Department of Transportation qualification demonstrated deliberate disregard of the employer's interest. Whether Mr. Cusack's actions constituted misconduct in connection with his work was a fact question for the Board to answer. *Terravista Landscape v. Williams*, 88 Ark. App. 57, 64, 194 S.W.3d 800, 804 (2004). The question for this court is whether substantial evidence supports the Board's decision. *Id.* We affirm.

Appellant was denied unemployment benefits upon the finding that he was discharged for misconduct. The dissent posits that although appellant had signed the University's Drug Free Policy, UCA had no written policy separately addressing the drug testing and that off-duty drug use cannot be the basis for misconduct because it impermissibly extends an employer's control of an employee's actions outside the workplace.

The misconduct in this case was not the off-duty use of marijuana. The misconduct was Mr. Cusack arriving at the workplace with marijuana in his system to drive the shuttle bus and transport the residents of the retirement center. Unemployment benefits are intended to benefit employees who lose their jobs through no fault or voluntary decision of their own. They are not intended to penalize employers or reward employees, but to promote the general welfare of the State. *Wacaster v. Daniels*, 270 Ark. 190, 194, 603 S.W.2d 907, 910 (Ark. App.1980). Mr. Cusack voluntarily arrived at the workplace with marijuana in his system to drive the bus and transport the residents. However, even

applying the misconduct test purported to be applicable by the dissent in this case, we must affirm:

> [I]n *Feagin v. Everett*, 9 Ark. App. 59, 652 S.W.2d 839 (1983) . . . we recognized that misconduct in *connection with the work* can occur while an employee is off duty. There, a teacher was fired after criminal charges had been filed against her for the possession of a controlled substance, which had been found in her home. In affirming the Board's finding of misconduct, we adopted a three-part test for determining whether an employee's off-duty conduct will be considered misconduct in connection with the work. First, there must exist a nexus between the employee's work and his or her off-duty activities. Second, it must be shown that the off-duty activities resulted in harm to the employer's interests. And third, the off-duty conduct must be violative of some code of behavior contracted between the employer and employee, and the employee's conduct must be done with the intent or knowledge that the employer's interests would suffer.

*Rucker v. Price*, 52 Ark. App. 126, 130, 915 S.W.2d 315, 317 (1996).

The discussions by the majority and dissent in the *Rucker* case provide a general policy summary behind the prohibition of off-duty drug use and the relationship to our unemployment determinations. In the case before us, appellant was required by UCA to submit to a drug test prior to his employment and signed a Drug Free Policy for the workplace. In addition, a specific contractual requirement for him to maintain his job as a shuttle bus driver was that he continue to be licensed as a commercial driver. A driver with a commercial driver's license is subject to the Department of Transportation's rules and regulations that specifically require that he be subject to random drug testing with the results being reported directly to his employer. *See generally* 49 C.F.R. pts. 350-399 (2008). Appellant knew that his employer's interests would suffer from his reporting to work with marijuana in his system when his job was to transport residents of the retirement center by driving a bus. We hold on these facts that substantial evidence supports the Board's decision.

Affirmed.

PITTMAN, C.J., BIRD, and VAUGHT, JJ., agree.

HART and ROBBINS, JJ., dissent.

JOHN B. ROBBINS, Judge, dissenting. Mr. Cusack was informed that he was discharged for testing positive for illegal drugs and that the drug screen was conducted in accordance with the employer's written drug policy. However, it is undisputed that the employer's drug-free workplace policy did not mention drug testing or contain a prohibition against a positive drug screen. Had the policy contained such a provision, I would agree that Mr. Cusack's conduct would have constituted misconduct. Because it did not, I would reverse the Board's decision and award appropriate benefits.

In *Grace Drilling Co. v. Director of Labor*, 31 Ark. App. 81, 790 S.W.2d 907 (1990), we held that where the claimant's positive test result was sufficient to satisfy that portion of the company's safety policy prohibiting any detectable level of drugs in the body, this constituted misconduct that disqualified him from benefits, as it represented a deliberate violation of the employer's rules and willful and wanton disregard of the standard of behavior that the employer had a right to expect of its employee. In *George's Inc. v. Director*, 50 Ark. App. 77, 900 S.W.2d 590 (1995), we reversed an award of unemployment benefits where the claimant tested positive for illegal drugs, noting that negative drug test results were a condition of the claimant's employment to which he agreed. In that case, we held that the employer's drug policy, which was implemented to provide safety and production, was reasonable. And in *Rucker v. Director*, 52 Ark. App. 126, 915 S.W.2d 315 (1996), we affirmed the denial of benefits where the claimant had agreed to be bound by his employer's policy and thus was aware of its terms and the ramifications for failing a test.

The distinguishing factor between the above cases is that University of Central Arkansas did not have a written policy that covered drug testing. Such a provision would doubtless have been reasonable in light of Mr. Cusack's employment as a driver responsible for the safety of others. But these simply are not the facts of this case. Furthermore, there is nothing in the record indicating that Mr. Cusack lost his commercial driver's license as a result of the positive test, and there was no evidence that he was impaired during his employment hours. In the absence of a written policy supporting the employer's decision to terminate appellant's employment, I would hold that the Board erred in finding that appellant's actions constituted misconduct in connection with his work.

I respectfully dissent.

HART, J., joins.