
# ARKANSAS COURT OF APPEALS

DIVISION IV
No. E-12-821

| | | |
|---|---|---|
| DON RAMIREZ | | **Opinion Delivered** AUGUST 28, 2013 |
| | APPELLANT | |
| V. | | APPEAL FROM THE ARKANSAS BOARD OF REVIEW [NO. 2012-BR-874] |
| DIRECTOR, DEPARTMENT OF WORKFORCE SERVICES, and ARKANSAS TECH UNIVERSITY | | |
| | APPELLEES | AFFIRMED |

## KENNETH S. HIXSON, Judge

The appellant in this unemployment case is Don Ramirez, and he worked as a sergeant on the campus security force of appellee Arkansas Tech University until being discharged on August 24, 2011. The Department of Workforce Services initially awarded unemployment benefits to Mr. Ramirez. Arkansas Tech appealed, and the Appeal Tribunal reversed the determination of the Department, finding that Mr. Ramirez was disqualified from receiving benefits pursuant to Ark. Code Ann. § 11-10-514(a)(1) (Repl. 2012) because he was discharged for misconduct in connection with the work. Mr. Ramirez appealed to the Board of Review, and the Board affirmed the decision of the Appeal Tribunal. The Board specifically found that Mr. Ramirez willfully violated his employer's sexual-harassment policy, and therefore that he was discharged for misconduct. Mr. Ramirez now appeals the Board's decision to this court, arguing that it was not supported by substantial evidence. We affirm.



On appeal, we review the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Board's findings of fact. *Smith v. Director*, 2013 Ark. App. 360. The Board's findings are conclusive if they are supported by substantial evidence. *Trigg v. Director*, 72 Ark. App. 266, 34 S.W.3d 783 (2000). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id*. Even when there is evidence upon which the Board might have reached a different decision, the scope of judicial review is limited to whether the Board could reasonably reach its decision upon the evidence before it. *Id*. Issues of credibility of witnesses and weight to be afforded their testimony are matters for the Board to determine. *Drennan v. Director*, 2012 Ark. App. 510.

In this case Mr. Ramirez was terminated from his employment after another campus officer, MM, complained that he had been sexually harassing her. Arkansas Tech has a written sexual-harassment policy, with which Mr. Ramirez was familiar, that prohibits sexual and gender harassment and all forms of sexual intimidation and exploitation. The policy provides, "The determination of what constitutes sexual harassment will vary with the particular circumstances, but it may be generally described as repeated and unwanted sexual behavior, such as physical contact and verbal comments or suggestions that adversely affect the working or learning environment of others."

Anita Ridley, an administrative specialist, testified that MM came to her in the spring of 2010 complaining that she was being sexually harassed by Mr. Ramirez. MM told Ms. Ridley that she was very upset because Mr. Ramirez had made a lot of sexual comments

to her.  MM reportedly told Ms. Ridley that Mr. Ramirez wanted MM to perform oral sex on him and threatened her job.  Ms. Ridley advised MM that she should report the harassment, but no formal complaint was made at that time.

Jennifer Fleming is an affirmative-action officer for Arkansas Tech.  Ms. Fleming testified that MM came to her in September 2010 complaining of being sexually harassed by Mr. Ramirez and two other officers.  MM told Ms. Fleming that Mr. Ramirez called her and said he would fire her unless she gave him oral sex, and that Mr. Ramirez also told MM to call him when she needed a "booty call."  Ms. Fleming stated that these comments were a violation of the university's sexual-harassment policy.  Ms. Fleming stated that she interviewed the officers and that they admitted to making inappropriate comments toward MM, although they claimed that MM had started the conversations.

Susan Nickelson, vice president of student services, reviewed the information presented to her by other university employees and determined that the three officers, including Mr. Ramirez, had violated the sexual-harassment policy.  Ms. Nickelson stated that it was clear to her that the officers had engaged in discussions about sexual matters that were not welcomed by MM.  Ms. Nickelson acknowledged that she did not personally interview anyone, but relied only on the statements given to her by Ms. Fleming.  Ms. Nickelson decided to terminate Mr. Ramirez based on information that he had repeatedly called MM and made inappropriate comments.

MM testified that she began working for Arkansas Tech in 2007.  She indicated that between 2007 and 2010 Mr. Ramirez made inappropriate comments to her, but that she did

not complain to anyone. However, the comments increased, and she complained in 2010. She later filed a formal complaint in July 2011.

MM testified that she was subjected to sexual harassment by Mr. Ramirez. She stated that he did not make direct requests for sex, but that he told her if she needed a "booty call" to call him. Mr. Ramirez also asked MM what color her nipples were. MM stated that she had been dating another campus officer, Joe Paterak, and that Mr. Ramirez would inquire about their sex life. MM testified that Mr. Ramirez made comments of a sexual nature more than five times and that she did not welcome or initiate the conversations. She acknowledged that she never specifically told Mr. Ramirez that his comments were unwanted or unwelcome, but that she would try to change the subject when he made these comments. MM testified that the sexual harassment created a hostile work environment and adversely affected her job to where she could no longer work effectively.

Mr. Ramirez testified on his own behalf. He denied MM's allegations that he had made any comments of a sexual nature to her. Mr. Ramirez suggested that MM was falsifying her allegations against him because she and Mr. Paterak were both married while they were dating, and Mr. Ramirez had told MM that she should quit dating Mr. Paterak because her conduct violated the officer's code of ethics and she could be fired for it. MM filed her formal complaint of sexual harassment against Mr. Ramirez on the day after Mr. Paterak broke up with her. Mr. Paterak testified that MM had brought up the topic of their sexual relationship with coworkers, and that after he broke up with her she sent him a threatening text message followed by her arriving at his apartment in a rage and striking him.

In this appeal, Mr. Ramirez argues that there is no substantial evidence to support the Board's finding that he was discharged for misconduct in connection with the work. "Misconduct" for purposes of unemployment compensation involves (1) disregard of the employer's interest, (2) violation of the employer's rules, (3) disregard of the standards of behavior that the employer has the right to expect, and (4) disregard of the employee's duties and obligations to his employer. *Rucker v. Director*, 52 Ark. App. 126, 915 S.W.2d 315 (1996). Mr. Ramirez contends that the evidence did not support the Board's determination that he willfully violated his employer's sexual-harassment policy.

In support of his argument, Mr. Ramirez asserts that MM's testimony conflicted with some of the facts in her written complaint. He further notes the inconsistency between MM's testimony, where she said that he never directly asked her for sex, and the testimony of other employees, who said that MM had alleged that Mr. Ramirez asked her for oral sex. Mr. Ramirez posits that MM had a motive to file a false and malicious complaint, and that her accusations were specifically denied by him and disproved at the hearing. Furthermore, Mr. Ramirez contends that it was MM who brought up her sexual relationship with coworkers, and that even assuming Mr. Ramirez made any comments to her, MM never informed him that his comments were unwanted or made her uncomfortable.

Mr. Ramirez also asserts that the only first-hand testimony offered by Arkansas Tech came from MM, and that the remaining witnesses had no direct knowledge of any alleged misconduct. Mr. Ramirez contends that the decision to terminate him was based merely on MM's allegations, with no reasonable investigation into whether any misconduct actually

5

occurred. He cites *A. Tenenbaum Co. v. Director*, 32 Ark. App. 43, 796 S.W.2d 348 (1990), where we affirmed the Board's finding that the claimant had been discharged for reasons other than misconduct related to the work, when he was discharged merely for being issued a citation for DWI without regard to the truth or falsity of the charge.[1] Mr. Ramirez complains that Ms. Nickelson, who terminated him, never interviewed any employees and instead relied only on Ms. Fleming's report. Mr. Ramirez argues that under the circumstances presented, no reasonable mind could accept MM's testimony as adequate to support the conclusion that he had engaged in any misconduct.

We hold that substantial evidence supports the Board's finding that Mr. Ramirez was terminated for misconduct in connection with the work as a result of violating his employer's sexual-harassment policy. Although appellant contends that there were inconsistencies in the testimony, the credibility of witnesses and the drawing of inferences from the testimony is for the Board of Review, and not this court. *Baker v. Director*, 39 Ark. App. 5, 832 S.W.2d 864 (1992). Although Mr. Ramirez denied making any inappropriate sexual comments, the Board found that he was not credible. Although MM may not have directly informed Mr. Ramirez that his repeated sexual comments were unwelcome, she testified that she did not initiate the conversations and would try to change the subject. MM also stated that Mr. Ramirez's comments increased and got worse over time, resulting in a hostile work environment where she could no longer work effectively. Considering the explicit and offensive nature of the

---

[1]Mr. Ramirez also relies on three unpublished decisions of this court. However, these unpublished opinions were issued before July 1, 2009, and therefore may not be cited, quoted, or referred to in arguments, or referred to by any court. Ark. Sup. Ct. R. 5-2(c).

SLIP OPINION

SLIP OPINION

comments described in the testimony, the Board could reasonably conclude that Mr. Ramirez willfully violated the sexual-harassment policy by making unwanted comments of a sexual nature to MM. And contrary to appellant's argument, he was not fired on the mere basis of a charge; MM and other officers provided evidence of the sexual harassment to the university's affirmative-action officer, and, at the hearing, testimony was elicited from which the Board could conclude that the harassment had actually occurred.

Mr. Ramirez alternatively argues that the Appeal Tribunal erred in its opinion when it stated that "a neutral witness confirmed that complaints about the conduct were made." Mr. Ramirez suggests that MM's complaints about his conduct did not constitute substantial evidence that it occurred. However, we hold that there was no reversible error. The Board made it clear in its opinion that it found that Mr. Ramirez had in fact violated the sexual-harassment policy, resulting in his termination, by repeatedly approaching MM with unwanted sexual advances and inquiries.

Finally, Mr. Ramirez very briefly argues that, in light of the inconsistent testimony undermined by MM's malicious motives, at the very least the Board should have remanded for the taking of additional evidence. Arkansas Code Annotated section 11-10-525(c)(1) (Repl. 2012) provides that the Board may direct that additional evidence be taken. However, this is a discretionary call by the Board, and it is not required to do so as long as each side had notice and opportunity to rebut the evidence of the other party. *See Ark. Game & Fish Comm'n v. Director*, 36 Ark. App. 243, 821 S.W.2d 69 (1992). It appears from the record that both parties had a fair opportunity to present their evidence at the hearing before the Appeal



Tribunal, and we find no abuse of discretion in the Board's denial of appellant's request to take additional evidence.

Affirmed.

WHITEAKER and VAUGHT, JJ., agree.

*Chisenhall, Nestrud & Julian, P.A.*, by: *Denise Reid Hoggard*, for appellant.

*Phyllis A. Edwards*, Associate General Counsel, for appellee.